OVERTON, Senior Justice.
Richard Joseph Donovan has petitioned this Court for a writ of mandamus. We have jurisdiction. See Art. V, section 3(b)(8), Fla. Const.
This is a gain time case related to our decision in State v. Lancaster, 687 So.2d 1299 (Fla.1997), which was vacated by the United States Supreme Court. See Lancaster v. Florida, 522 U.S. 801, 118 S.Ct. 37, 139 L.Ed.2d 5 (1997). On remand, we reconsidered the case in light of the United States Supreme Court’s decision in Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), and decided it in accordance with that decision. See State v. Lancaster, 731 So.2d 1227 (Fla.1998), cert. denied, — U.S. -, 119 S.Ct. 1591, 143 L.Ed.2d 684 (1999).
The relevant facts in this case reflect that in 1987, in Lee County Case No. 86-1548, Donovan began an overall prison sentence of fifteen years followed by five years’ probation for a number of crimes committed on September 22, 1986.[1] As pertinent to our inquiry, while in service of the fifteen-year prison term, Donovan received 600 days of Administrative Gain Time under section 944.276, Florida Statutes (1987), and 1230 days of Provisional Credits under section 944.277, Florida Statutes (Supp.1988). Due in part to these awards, Donovan was released early and began service of his probation.
Donovan violated his probation and in 1995, the trial court revoked his probation and resentenced Donovan to an overall sentence in the same case of twenty-seven *614 years.[2] Donovan was not given credit for his previously awarded Administrative Gain Time and Provisional Credits.
In 1998, Donovan filed a petition for writ of mandamus. On June 4, 1999, we granted Donovan’s petition pursuant to our decision in State v. Lancaster, 731 So.2d 1227 (Fla.1998) cert. denied, — U.S. -, 119 S.Ct. 1591, 143 L.Ed.2d 684 (1999). Shortly thereafter, Respondent, Michael W. Moore, Secretary of the Florida Department of Corrections (hereinafter the Department), filed a notice of compliance with the order granting the petition. Donovan disagreed with the Department and filed a motion for issuance of the writ and enforcement of mandate.
In its notice of compliance with the order granting the petition, the Department asserts that Donovan’s case is different from that of Lancaster and thus, while it may not forfeit Donovan’s Provisional Credits and Administrative Gain Time pursuant to either sections 944.28(1) or 948.06(7), it may utilize section 944.278, Florida Statutes (1997), to do so under the reasoning in Meola v. Department of Corrections, 732 So.2d 1029 (Fla.1998).
For the reasons discussed below, we find that, while the Department has complied with this Court’s order which instructed it to restore any Administrative Gain Time or Provisional Credits it had forfeited upon probation revocation, the Lynce decision also forbids the cancellation of Donovan’s credits under section 944.278, Florida Statutes (1997), enacted as part of the Safe Streets Initiative of 1994. See ch. 93-406, § 35, at 2967, Laws of Fla.
In the Meóla case, the petitioners received overcrowding credits under a statute that provided for credits when the prison overcrowding exceeded ninety-eight percent of lawful capacity. However, the overcrowding statute in effect at the time of their offenses provided for the award of credits only when prison overcrowding exceeded ninety-nine percent of lawful capacity,[3] and prison overcrowding never reached that level during the period in which such credits were being awarded. We noted that the United States Supreme Court had indicated in Lynce that if the prison population did not exceed the relevant percentage threshold during a certain time-frame and an inmate received overcrowding credits during those years, “there is force to the argument that the cancellation of that portion [of the credits] did not violate the Ex Post Facto Clause.” Lynce, 519 U.S. at 449, 117 S.Ct. 891. Thus, we held in Meóla that the petitioners were not entitled to relief under the more generous statutes because they were part of a “separate, intervening gain-time statute that [was] more lenient than both the statute in effect at the time of the offense and the one presently in effect.” Meola, 732 So.2d at 1034 (quoting Waldrup v. Dugger, 562 So.2d 687, 695 (Fla.1990)) (alteration in original).
Nevertheless, in Meóla, none of the petitioners had been released due to the award of the subject credits. In this case, on the other hand, the fact that Donovan received overcrowding credits and was released, due in large part to the award of the overcrowding credits, makes this case much more similar to the situation in Lynce. Further, if the State cannot use statutes enacted in 1989 to forfeit a releas-ee’s credits based on ex post facto principles, it would make no sense to allow the State to take the credits through use of a statute enacted in 1993. See § 944.278, Fla. Stat. (1997); ch. 93^06, § 35, at 2967, Laws of Fla. (the Safe Streets Initiative).
Even though the petitioners in Meóla were not entitled to relief because the statute in effect when they committed their offenses required a ninety-nine percent prison overcrowding threshold, and the statute in effect when Donovan com *615 mitted his offenses also had a ninety-nine percent threshold, we believe that the fact that Donovan was released removes the “speculativeness” that may have been present before the credits were awarded and before Donovan’s early release based on those statutes. As we stated in Lancaster, explaining the United States Supreme Court decision in Lynce,
After Lynce, however, an ex post facto inquiry involves not only looking at the time of offense, but also involves looking at subsequent time frames as well to determine whether a possible, yet speculative benefit has become more definite. See Lynce v. Mathis, 519 U.S. at 446, 117 S.Ct. 891. In Lynce, the grant of overcrowding credits was speculative at the time of that inmate’s offense because no one could tell for sure whether the prison overcrowding levels would become so extreme as to trigger the relevant overcrowding statutes. Nevertheless, Lynce was subsequently awarded a certain amount of credits which ultimately led to his release from incarceration. Therefore, by the time Lynce was released, the credits were clearly no longer non-quantifiable or unknown. On the contrary they had become a certainty. Id. (concluding that “unlike in Morales, the actual course of events makes it unnecessary to speculate”).
In [Lancaster’s] case, as in Lynce’s case, at the time of Lancaster’s offense overcrowding gain time had already been provided for by statute.... Furthermore, when Lancaster was released on probation, the 1998 Safe Streets Initiative had not been enacted yet. Thus, akin to the situation with Lynce, Lancaster’s “hope” of receiving overcrowding gain time had become a reality.
... If the State were to now apply that later-enacted law to Lancaster and cancel his overcrowding gain time, the effect of that law would be to retroactively take away something to which Lancaster had an expectation at the time of his offense, actually received during his incarceration, and actually retained after revocation or must now be awarded because the 1989 forfeiture provision[s] may not be applied to him.... We find that the application of the Safe Streets Initiative to Lancaster now would result in the taking of something which was certainly not speculative. Accordingly, we conclude that under the analysis of Lynce, the State cannot apply section 944.278 (the Safe Streets Initiative) to Lancaster to cancel his Administrative Gain Time or Provisional Credits without violating the Ex Post Facto Clause.
Lancaster, 731 So.2d at 1233 (parallel citations omitted).
Similarly, we find in this case that the application of the Safe Streets Initiative to Donovan now would result in the taking of something that is no longer speculative. Accordingly, we hold consistent with the United States Supreme Court decision in Lynce that the State may not cancel or forfeit Donovan’s Administrative Gain Time and Provisional Credits under the Safe Streets Initiative. See also Jackson v. Singletary, 695 So.2d 494 (Fla. 3d DCA 1997)(applying first part of section 944.278, canceling awards for all inmates, to petitioner would be an ex post facto violation based on analysis in Lynce); State ex rel. Florida Dept. of Corrections v. Stevenson, 695 So.2d 727 (Fla. 5th DCA 1996) (finding it unconstitutional to apply second part of section 944.278 to inmates released prior to the statute’s enactment, because such inmates could not have contemplated the later-enacted statute’s “additional consequences for their violation of probation”), review dismissed, 743 So.2d 15 (Fla.1999).
While the Department must now credit Donovan with his previously awarded Administrative Gain Time and Provisional Credits, we find no need to issue a writ commanding that the Department do so as we are confident that it will comply with this opinion. Accordingly, Donovan’s mo *616 tion for issuance of the writ and enforcement of mandate is denied.
It is so ordered.
HARDING, C.J., and SHAW, ANSTEAD and LEWIS, JJ., concur.
WELLS, J., dissents with an opinion.
PARIENTE, J., recused.

. Donovan received a 15-year prison sentence for the crime of burglary, a 30-year term of probation for the crime of arson, and a five-year term of probation for the crime of grand theft. Both probationary terms were to be served consecutively to the 15-year sentence.

. The 27-year prison term was ordered on the arson count. Donovan received a 15-year sentence on the burglary count and five years on the grand theft count.

. One of the petitioners in Meola, Jones, committed his relevant offense prior to the enactment of any of the overcrowding statutes. See Meola, 732 So.2d at 1032-33.